UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERESA COHEN-CHANEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:10-cv-0400-JMS-TAB |
| | ) | |
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION, | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

Moving for summary judgment, Defendant National Railroad Passenger Corporation is attempting to derail Plaintiff's employment discrimination and retaliation claims brought under Title VII and § 1981. Plaintiff claims that Defendant failed to rehire, promote, train, and provide schedule adjustments and overtime because of her race and in retaliation for filing discrimination complaints with Defendant's Dispute Resolution Office ("DRO"). Defendant contends that Plaintiff has not provided sufficient evidence for her discrimination and retaliation claims to survive summary judgment under the direct and indirect methods of proof. For the reasons below, the Magistrate Judge finds Defendant's arguments well taken and recommends that Defendant's motion for summary judgment [Docket No. 47] be granted.

**II.    Background**

Plaintiff is a long-time employee of Defendant and an African American. [Docket No. 36 at 2.] During most of Plaintiff's tenure, she was employed as a secretary under the supervision of assistant superintendent Ed Alderman. [Docket No. 48 at 2.] In August 2008, Plaintiff

1

voluntarily left her secretary position to pursue out-of-state conductor training. [*Id.*] In November 2008, Plaintiff contacted Alderman in an attempt to reacquire her former secretary position. [*Id.* at 2–3.] According to Plaintiff, Alderman falsely told her that she "had been disqualified from her position because of her absence while she was in training for the conductor position." [*Id.* at 3.] Plaintiff responded by filing a complaint with DRO asserting that Alderman discriminated against her. [*Id.*] Alderman allegedly found out about the DRO complaint and abolished the secretary position in retaliation. [*Id.*] Plaintiff nonetheless used her senior status with the company to "bump" another employee from their secretary position. [Docket No. 56 at 6.]

After resuming the role of secretary, Plaintiff applied for a contract-agent position in March 2009. [Docket No. 36 at 3.] Plaintiff claims that Lee Smart was aware of Plaintiff's prior communications with DRO and denied Plaintiff the position in retaliation. [*Id.*] Plaintiff also claims that her current supervisor, John Grey, treats her quite differently than her comparators by not allowing her to make up missed hours or work overtime or attend training that would make her eligible for other positions. [*Id.*] Grey allegedly was aware of Plaintiff's DRO complaints and an Equal Employment Opportunity Commission complaint. [*Id.*]

### III. Discussion

Although Title VII and § 1981 "differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006). A plaintiff can therefore support either claim by directly showing "that racial discrimination motivated the employment decision, or, as is more common, she may rely on the indirect burden-shifting method set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973)." *Sublett*, 463 F.3d at 736. The direct method enables a plaintiff to present either direct evidence of discriminatory intent or a "convincing mosaic" of circumstantial evidence that would allow a reasonable jury to infer that discriminatory intent motivated the adverse employment action. *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011).

In contrast, the indirect method requires a plaintiff to "demonstrate: (1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no similarly situated employees who did not engage in protected activity suffered an adverse employment action." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 788 (7th Cir. 2007). Once the plaintiff makes this *prima facie* showing, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action, which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Sublett*, 463 F.3d at 736 (internal quotation marks omitted). At that point, "[t]he plaintiff . . . resumes her original burden of proof and must establish by a preponderance of the evidence that the defendant's proffered reasons are pretextual." *Id.*

### A. The secretary position

#### 1. *Adverse employment action*

The second amended complaint alleges that Defendant abolished Plaintiff's secretary position in retaliation for Plaintiff's DRO report that asserts Alderman discriminated against her. [Docket No. 36 at 4.] Common to both the direct and indirect methods of proof is the requirement that there be a materially adverse employment action. *Andonissamy v. Hewlett-*

*Packard Co.*, 547 F.3d 841, 850 (7th Cir. 2008); *Amrhein v. Health Care Servs. Corp.*, 546 F.3d 854, 858 (7th Cir. 2008). For a materially adverse employment action to occur there "must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007). None of these adverse actions are present in this case.

Plaintiff was not fired from her secretary position; she voluntarily left her position to pursue out-of-state conductor training. [Docket No. 36 at 2.] When Plaintiff sought to return as a secretary, she was successful because she used her seniority to "bump" another employee. [Docket No. 56 at 10; Cohen Aff. at ¶ 5.] Although Plaintiff contends that Alderman attempted to prevent her from returning, mere attempts to bring about an adverse employment action are insufficient. *See, e.g., Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) (explaining that there must be a tangible job consequence for there to be an adverse employment action); *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004) (explaining that there must be a tangible job consequence for there to be an adverse action). Finally, even though Plaintiff did not get her former secretary position back, she does not claim that her new secretary position resulted in a change in responsibilities or benefits. *See Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 480 (7th Cir. 2010) (explaining that a lateral move to a new position that does not involve demotion, loss in pay or benefits, or results in a significant change to working conditions is not adverse); *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (explaining that a "transfer involving no reduction in pay and no more than a minor change in working conditions" is not adverse). To the contrary, as Defendant points out, Plaintiff arguably

has a more prestigious secretary position because she now directly reports to the superintendent. [Docket No. 48 at 20.] For these reasons, the Magistrate Judge finds that Plaintiff has not identified a materially adverse employment action and therefore recommends summary judgment on Plaintiff's failure-to-rehire claim.

    *2.    Causal connection*

In addition to Plaintiff's failure to identify a materially adverse employment action, Plaintiff is unable to establish a causal link between Plaintiff's DRO complaint and Alderman's alleged refusal to rehire her. The second amended complaint states that Alderman retaliated against Plaintiff when she filed a DRO complaint. [Docket No. 36 at 2–3.] However, according to Plaintiff, the DRO complaint was not filed until after Alderman had already told her that she was disqualified from the position. [*Id.* at 3.] Therefore, it is irrelevant that Plaintiff later filed a DRO complaint and Alderman later abolished the position because Alderman had already made a decision about the position prior to Plaintiff filing the complaint.[1]

Plaintiff attempts to make up for this disconnect by asserting that Alderman actually disqualified Plaintiff in retaliation for a June 2007 DRO complaint. [Docket No. 56 at 10.] This allegation, however, was not alleged in the complaint and Plaintiff's opposition to summary judgment raises it for the first time.[2] Such a newly asserted factual allegation ignores the

---

[1]The complaint alleges that Alderman "falsely" told Plaintiff that she was disqualified. [Docket No. 36 at 2.] Plaintiff has not pursued the "false" aspect of the disqualification allegation on summary judgment. *Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (stating that claims and arguments not presented to the district court in response to summary judgment are abandoned and waived).

[2]The facts in the second amended complaint are listed in chronological order beginning in August 2008 and nothing in the complaint refers to anything in 2007. [Docket No. 36 at 2.] Moreover, the second amended complaint only refers to one DRO complaint, which she alleges

5

requirements of Federal Rule of Civil Procedure 15(a) and is therefore not properly before the Court for consideration. *See E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 443 (7th Cir. 2008) (holding that the very first mention of facts in a response brief for summary judgment entitled the court to regard the claim as "too late to change so basic a factual premise in a case."); *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (affirming a decision to disregard a claim raised for the first time in response to summary judgment); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

The remaining evidence that Plaintiff presents to draw a causal connection between Plaintiff's DRO complaint and Alderman's alleged refusal to rehire her is:

- ! In August 2008, Alderman said to another African American employee "I hear your buddy's leaving for Assistant Conductor's training. When are you leaving?" [Docket No. 56 at 5, 10.]

- ! Alderman allegedly told Plaintiff upon her return as a secretary "how much would it cost you for this job?" [Docket No. 56 at 6, 10.]

While suspicious timing and ambiguous statements are circumstantial evidence, an inference of retaliation cannot reasonably be drawn from these statements because they do not in any way reference Plaintiff's DRO complaint. *See, e.g., O'Neal v. City of Chi.*, 588 F.3d 406, 410 (7th Cir. 2009) (calling plaintiff a complainer and referring to her as a gang-banger–rumors that prompted a transfer and later a lawsuit–were insufficient circumstantial evidence because they did not reference the lawsuit). While these statements are understandably disconcerting, without the 2007 DRO complaint—which is not properly before the Court—to connect the dots,

---

came after Alderman disqualified her. [Docket No. 36 at 2–3.] Therefore, the second amended complaint could not have been referring to a 2007 DRO complaint.

Plaintiff's retaliation claim lacks the evidence necessary to draw a causal connection. Consequently, this disconnect serves as an additional basis to recommend that summary judgment be granted for Plaintiff's failure-to-rehire claim.

### 3. *Similarly situated employees*

Under the indirect method, Plaintiff's retaliation claim also fails because Plaintiff has not compared herself to a similarly situated person. The Court's September 9, 2010, order found that Plaintiff's complaint "does not compare her treatment to that of any other employee, let alone one who is similarly situated." [Docket No. 22 at 4.] Since then, Plaintiff has amended her complaint twice [Docket Nos. 32, 36], but still has not alleged that she was treated differently than a similarly situated employee. The only alleged differential treatment in Plaintiff's second amended complaint is not related to her attempt to obtain her former secretary position. [*See* Docket No. 36 at 4 ("Cohen-Chaney was similarly situated to a white male employee who was hired to the position of contracting agent.").]

In summary, Plaintiff has not shown that a materially adverse employment action occurred, which is an essential element under the direct and indirect methods of proof. Moreover, Plaintiff has not established a causal connection under the direct method and has not alleged that she was treated differently than a similarly situated person under the indirect method. Accordingly, the Magistrate Judge recommends that summary judgment be granted as to Plaintiff's claim that the secretary position was abolished in retaliation for filing a DRO complaint.

**B.      Contracting-agent position**

*1.      Causal connection*

Plaintiff is also unable to set forth a *prima facie* case for her failure-to-promote claim. The second amended complaint asserts that Lee Smart was the decision-maker who retaliated against Plaintiff by not hiring her based on his knowledge of the DRO complaints. [Docket No. 36 at 3.] In Plaintiff's opposition to summary judgment, Plaintiff does not mention Lee Smart, and instead claims that Katie Jones, an African-American female who participated in the interviews, "would have had access" to Plaintiff's personnel file and DRO complaints. [Docket No. 48 at 9; Docket No. 56 at 11.] Apparently, Plaintiff chose to abandon her attempt to draw a causal link between the DRO complaints and Smart's decision. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the nonmoving party must provide evidence beyond the pleadings setting "forth specific facts showing that there is a genuine issue for trial."); *Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (stating that claims and arguments not presented to the district court in response to summary judgment are abandoned and waived).

With respect to Jones, Plaintiff does not claim that she made any adverse employment decision or influenced Smart's decision. Moreover, Plaintiff does not claim that Jones actually accessed Plaintiff's personnel file, and Jones' affidavit states that "[a]t the time of Cohen-Chaney's interview in April 2009, I was not aware of any internal or external complaints of discrimination she may have made against Amtrak." [Docket No. 49, Ex. 8 at 4.] Even if Jones accessed the personnel file, mere awareness of prior charges is insufficient to establish a causal connection. *Tai v. Shinseki*, 325 F. App'x 444, 446 (7th Cir. 2009) (citing *Healy v. City of Chi.*,

450 F.3d 732, 741 n.11 (7th Cir. 2006)). Thus, Plaintiff has not presented sufficient evidence to proceed under the direct method.

   2.   *Similarly situated employees*

Under the indirect method, a plaintiff "must show an employee who is similarly situated, demonstrating 'that there is someone who is directly comparable to him in all material aspects.'" *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004). Plaintiff, however, does not argue that Thomas Gray, the recipient of the contracting-agent position, is a similarly situated employee. Instead, Plaintiff argues that Gray, unlike Plaintiff, was not qualified for the position. [Docket No. 56 at 11.]

Indeed, the parties set forth a compelling case for why the two employees are not similarly situated. Plaintiff was a secretary, she had vendor contract experience, did administrative work in the mechanical and material management departments, and has a college degree. [Docket No. 56 at 11.] In contrast, Gray worked as lead machinist and foreman in the mechanical and locomotive departments, and was a supervisor in the procurement and material management department. [Docket No. 48 at 25.] Plaintiff also claims that Gray has no certifications and no college degree, and was suspended for inappropriate Internet usage. [Docket No. 56 at 11.] The only similarity between Plaintiff and Gray is that they worked in the mechanical and material departments at some point in their careers. However, Plaintiff only completed administrative tasks in these departments,[3] while Gray was a foreman and later a supervisor. *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 788 (7th Cir. 2007) (explaining that

---

[3]Plaintiff monitored and submitted budget breakdowns, processed and submitted vendor scrap material sales, made payments and processed certain requests. [Docket No. 56 at 11.]

9

job experience and education are relevant factors to the similarly situated inquiry); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 754 (7th Cir. 2006) (same). Thus, Gray is not a similarly situated employee.

Perhaps the reason that Plaintiff's argument does not work is because she jumped straight to arguing pretext. *See Jordan v. City of Gary, Ind.*, 396 F.3d 825, 834 (7th Cir. 2005) ("[I]n order to establish pretext, Jordan must establish that her credentials were 'so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"). Assuming that Plaintiff established that Gray was similarly situated, Defendant nonetheless has set forth a litany of facts to show that Gray had sufficient experience to qualify him for the position. For example, Gray worked for Amtrak for nearly thirty years; he was a lead machinist, a foreman, and a supervisor; he negotiated for the purchase of parts; he demonstrated knowledge of relevant computer applications; and had the highest interview score. [Docket No. 48 at 25.] Plaintiff responds by belittling Gray's lack of formal education, by raising a disciplinary incident, and by bolstering her own qualifications. [Docket No. 56 at 11.] However, at this point in the analysis, Plaintiff is charged with showing that Defendant has not offered an honest and legitimate explanation for hiring Gray over Plaintiff. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) . While Gray may not have a formal education and has a minor disciplinary incident on file, Gray's work experience and interview score provide a legitimate explanation for hiring him. *Id.* ("It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual meaning it

was a lie."). Plaintiff must present more than her "own, subjective-self appraisal to create a genuine issue of fact," which she has failed to do. *Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008). The Magistrate Judge therefore recommends that summary judgment be granted as to the failure-to-promote claim.[4]

### C. Schedule adjustments and overtime

*1. Adverse employment action*

Plaintiff also claims that her supervisor John Grey does not allow her to make up hours, work overtime, or train for certain positions in retaliation for Plaintiff's DRO and EEOC complaints. [Docket No. 36 at 4.] Citing *Vance v. Ball State University*, 646 F.3d 461, 474 (7th Cir. 2011), Plaintiff argues that "when an employer exploits a known vulnerability of a worker, a request to work different hours may constitute an adverse employment action." [Docket No. 56 at 12.] Plaintiff's reliance on *Vance* is misplaced. In *Vance*, the employee did not make a request for a new work schedule until after the employer unilaterally altered the employee's schedule. *Vance*, 646 F.3d at 474. The Seventh Circuit found that there was no materially adverse action because a plaintiff "must allege more than a dislike for her new assignments . . . ." *Id.*; *see also Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (stating that an employment action is adverse when it "significantly alters the terms and conditions of the employee's job."); *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) ("When an employee's pay, job

---

[4]Plaintiff also sets forth an alternative argument, arguing in three sentences that even if Plaintiff was not comparable to Gray, Defendant selectively grooms employees so that it is impossible for her to have a shot at the job. [Docket No. 56 at 11–12.] Plaintiff has not developed this argument or supported it with any evidence. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (undeveloped and perfunctory arguments are deemed waived); *Basith v. Cook Cnty.*, 241 F.3d 919, 928 (7th Cir. 2001) ("Conclusory allegations not supported by the record are not enough to withstand summary judgment.").

title, and responsibilities remain the same, a change in the employee's "working hours certainly does not rise to the level of an adverse employment action."); *Hoffman-Dombrowski v. Arlington Intern. Racecourse*, 254 F.3d 644, 653 (7th Cir. 2001) (stating that a change in schedule or the lack thereof must be more than a "mere inconvenience or an alteration of job responsibilities" to be materially adverse).

Unlike *Vance*, Plaintiff does not claim her schedule was unilaterally altered by her employer. Rather, Plaintiff's schedule was altered because she requested leave under the Family Medical Leave Act, which Defendant was required to comply with. It simply stretches *Vance* too far to encompass Plaintiff's denied request to make up missed hours, especially since Plaintiff does not claim that the terms of her employment were materially altered by the denial. *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 663 (7th Cir. 2011) (stating that disfavored scheduling, absent a tangible job consequence, is not adverse); *Gross v. City of Chi.*, No. 05-c-547, 2005 WL 3277881, at *3 (N.D. Ill. Nov. 29, 2005) (denying a shift change is not adverse when terms of employment were not altered); *Mingo v. Roadway Express, Inc.*, 135 F. Supp. 2d 884, 901 (N.D. Ill. 2001) ("[D]enial of the change in work shift is not an actionable employment action."); *Campbell v. Morton Grove Pharm., Inc.*, No. 98-C-37, 1998 WL 786452, at *4 (N.D. Ill. Nov. 5, 1998) ("Refusing to give Campbell his preferred shift for a short period of time does not qualify as an adverse employment action."). Although Plaintiff claims that the refusal exploits her "known vulnerability" [Docket No. 56 at 3, 12], the Seventh Circuit has not held that leave under FMLA automatically amounts to a vulnerability for the purpose of Title VII and § 1981. To survive summary judgment, Plaintiff must precisely identify her vulnerability and explain how Defendant exploited it. Plaintiff has failed to do so. *See, e.g., Washington v. Ill.*

12

*Dep't of Rev.*, 420 F.3d 658, 662 (7th Cir. 2005) (changing plaintiff's work hours with knowledge that she needed set hours to care for her disabled son, and thereby forcing her to use vacation time and essentially cutting her pay by 25%, was a materially adverse change). Finally, even though the collective bargaining agreement does not prohibit a schedule adjustment, that does not necessarily mean that an employer is required to grant one. *See Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1033 (7th Cir. 2004) (failure to grant a discretionary benefit is not an adverse action).

The denial of overtime also does not automatically amount to a materially adverse employment action. *Lewis*, 496 F.3d at 654 ("Depending on the type of work, overtime can be a significant and recurring part of an employee's total earnings similar to a recurring raise or it could be insignificant and nonrecurring like a discretionary bonus."). While the Seventh Circuit has cautioned courts not to define adverse actions so narrowly as to create a "license to discriminate," *id.*, Plaintiff fails to explain whether overtime was a recurring part of her earnings. Plaintiff offers no evidence regarding the frequency in which overtime was granted to employees. While Plaintiff apparently earned over seven hours of overtime,[5] the lack of detail in Plaintiff's brief invites the Court to speculate as to the time period in which the seven hours were awarded; seven hours could have been awarded over one week or five years. Moreover, Plaintiff does not explain how much overtime she was seeking or how often her requests for overtime were denied or granted. Ultimately, Plaintiff has not supported her claim with any evidence or explanation other than the conclusory assertion that a "schedule adjustment . . . in combination

---

[5]Defendant's brief sets forth the number of hours each employee worked [Docket No. 48 at 13], and Plaintiff does not address or dispute these hours.

with the refusal to allow overtime, would be materially adverse." [Docket No. 56 at 12.] This explanation is insufficient to establish a materially adverse employment action. *Matsushita*, 475 U.S. at 586 (stating that the nonmoving party must provide evidence beyond the pleadings setting "forth specific facts showing that there is a genuine issue for trial."); *Palmer*, 327 F.3d at 597–98 (stating that claims and arguments not presented to the district court in response to summary judgment are abandoned and waived)  For these reasons, the Magistrate Judge finds that summary judgment is appropriate as to Plaintiff's schedule adjustment and overtime claims.

    2.    *Causal connection*

Even if the denial of a schedule adjustment and overtime were materially adverse, Plaintiff has not produced any evidence to suggest that these denials were based upon a discriminatory motive.  The second amended complaint asserts that Grey was aware of Plaintiff's communications with DRO and the EEOC.  [Docket No. 36 at 3.]  However, mere awareness of prior charges is insufficient to establish a causal connection.  *Tai*, 325 F. App'x at 446 (citing *Healy v. City of Chi.*, 450 F.3d 732, 741 n.11 (7th Cir. 2006)).  Moreover, Plaintiff abandoned the direct method when she failed to raise the allegation in opposition to summary judgment, instead opting to discuss similarly situated employees.  [Docket No. 56 at 12.] *Matsushita*, 475 U.S. at 586 (stating that the nonmoving party must provide evidence beyond the pleadings setting "forth specific facts showing that there is a genuine issue for trial."); *Palmer*, 327 F.3d at 597–98 (stating that claims and arguments not presented to the district court in response to summary judgment are abandoned and waived).  Consequently, these shortcomings

provide the Magistrate Judge with an additional reason to recommend summary judgment with respect to Plaintiff's schedule adjustment and overtime claims under the direct method.

   3.   *Similarly situated employees*

Under the indirect method, Plaintiff has not sufficiently identified a similarly situated employee for her schedule adjustment and overtime claims. A similarly situated employee is someone who is directly comparable to Plaintiff in all material aspects. *Herron*, 388 F.3d at 300. Plaintiff contends that Susan Wood, Linda Stafford, and Connie Bundy are similarly situated because they are all clerks subject to the same collective bargaining agreement. [Docket No. 56 at 13.] However, simply stating that these employees are clerks without setting forth the employees' job responsibilities, working conditions or benefits is insufficient to establish that they are similarly situated. *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1010 (7th Cir. 2009); *Perez v. Norwegian-Am. Hosp., Inc.*, 93 F. App'x 910, 917 (7th Cir. 2004). This is particularly important in this case because Plaintiff was a secretary, Bundy was a bulletin assignment clerk, and Stafford and Wood were statistical clerks.[6] [Docket No. 48 at 13.] Additionally, Plaintiff does not assert that these employees worked a comparable number of hours, and Stafford and Wood had different supervisors than Plaintiff. [Docket No. 56 at 12.] *See Vance*, 646 F.3d at 475 ("[T]he undisputed facts establish that they did not work a comparable number of hours. Thus, the two are not similarly situated."); *White v. Kroger Ltd. Partnership II*, No. 1:08-cv-1735-TWP-TAB, 2010 WL 5099304, at *5 (S.D. Ind. Dec. 8, 2010)

---

[6]It is unclear whether Plaintiff was even a clerk since Plaintiff only alleges that she was a secretary. Perhaps there is no distinction, but Plaintiff's description of herself with a job title different than "clerk" is all that is before the Court. In any event, Plaintiff does not explain what type of clerk she might be.

(explaining that similarly situated employees typically have the same supervisor). Finally, the mere fact that these employees may be subject to the same collective bargaining agreement is insufficient since it is very possible that all of Defendant's non-supervisory employees are subject to the same agreement. *Riley v. Nat'l R.R. Passenger Corp.*, No. 04-C-1750, 2004 WL 2533724, at *5 (N.D. Ill. Sept. 28, 2004) (explaining that employees are not similarly situated simply based on a shared collective bargaining agreement). Plaintiff therefore has failed to identify a similarly situated employee.

Even if Wood, Stafford, and Bundy were similarly situated, Defendant sets forth legitimate, nondiscriminatory reasons for granting certain employees a schedule adjustment. Supervisor Ronald Summers permitted Stafford and Wood to adjust their schedules on a one-time basis to attend doctors' appointments. [Docket No. 48 at 12.] Grey allowed Bundy to meet with third-shift employees one hour before her shift to work on the United Way Campaign. [Docket No. 48 at 13.] These are legitimate, nondiscriminatory reasons for allowing schedule adjustments. Plaintiff, however, fails to address Defendant's explanations, and simply states that this "explanation is pre-textual because other employees were allowed to change schedules and the TCU Agreement does not affirmatively prohibit it." [Docket No. 56 at 13.] This type of conclusory response is insufficient to raise a genuine issue of material fact. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (undeveloped and perfunctory arguments are deemed waived); *Basith v. Cook Cnty.*, 241 F.3d 919, 928 (7th Cir. 2001) ("Conclusory allegations not supported by the record are not enough to withstand summary judgment.").

With respect to overtime, Plaintiff was not treated less favorably. Defendant's brief sets forth the following list of overtime hours:

16

- Statistical Clerk Bennett (0);
- Bulletin Assignment Clerk Bundy (58.2);
- Timekeeper Michelle Harmon (0);
- Inventory/Material Control Clerk Michael Liddle (2.0);
- Statistical Clerk Barbara McNary (0);
- Inventory/Material Control Clerk Kitty McClure (4.0);
- Inventory/Material Control Clerk Daniel Morris (0);
- Statistical Clerk Stafford (1.3);
- Statistical Clerk Susan Wood (6.8);
- Secretary Cohen-Chaney (7.3).

[Docket No. 48 at 13.] Plaintiff does not challenge these hours and fails to address the fact she has more overtime than most of these employees. Plaintiff therefore has not raised a genuine issue as to whether she was treated less favorably than other similarly situated employees.

In summary, Wood, Stafford, and Bundy are not similarly situated employees with respect to Plaintiff's schedule adjustment and overtime claims. Additionally, Plaintiff failed to adequately address Defendant's nondiscriminatory explanation for granting schedule adjustments, and Plaintiff received more overtime than most employees. For these reasons, the Magistrate Judge recommends that summary judgment be granted as to Plaintiff's schedule adjustment and overtime claims.

### E. Training

Plaintiff also claims that she was retaliated against when she was not allowed to attend Strategic Asset Management training. Failing to train an employee may constitute an adverse employment decision if it reduces the employee's opportunities for future advancement. *O'Neal v. City of Chi.*, 588 F.3d 406, 409 (7th Cir. 2009). To support her claim, Plaintiff simply states that SAM training is crucial to job advancement and Melanie Bennett was able to obtain a management position because of SAM training. [Docket No. 56 at 13; Docket No. 59 at 13.] Plaintiff, however, has not supported this claim with any evidence or analysis, and therefore it

cannot survive summary judgment. *Matsushita*, 475 U.S. at 586 (explaining the nonmoving party must provide evidence beyond the pleadings setting "forth specific facts showing that there is a genuine issue for trial."); *Palmer*, 327 F.3d at 597–98 (explaining that undeveloped and perfunctory arguments are waived). The Magistrate Judge therefore recommends that summary judgment be granted as to Plaintiff's failure-to-train claim.

### IV. Conclusion

For the reasons above, the Magistrate Judge recommends that Defendant's motion for summary judgment [Docket No. 47] be granted, and that this case be dismissed with prejudice. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Dated: 01/06/2012

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Michael G. Cleveland
VEDDER PRICE P.C.
mcleveland@vedderprice.com

Megan J. Crowhurst
VEDDER PRICE P.C.
mcrowhurst@vedderprice.com

Adam Lenkowsky
ROBERTS & BISHOP
alenkowsky@roberts-bishop.com

Michelle R. Maslowski
FROST BROWN TODD LLC
mmaslowski@fbtlaw.com

Heather L. Wilson
FROST BROWN TODD LLC
hwilson@fbtlaw.com